```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
COMMUNITY FINANCE GROUP, INC. A          :
MINNESOTA CORPORATION,                   :          14cv5216(DLC)
                                         :
                    Plaintiff,           :          OPNION
                                         :          AND ORDER
            -v-                          :
                                         :
STANBIC BANK LIMITED and GREAT LAKES     :
AUTO TECH INT'L LTD.,                    :
                                         :
                    Defendants.          :
                                         :
---------------------------------------- X
```

APPEARANCES:

For Plaintiff:
Jay Kanetkar
530 Sylvan Ave.
Englewood Cliffs, NJ 07632

For Defendant Stanbic Bank Limited:
Mark G. Hanchet
Robert W. Hamburg
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020

DENISE COTE, District Judge:

　　　　Plaintiff Community Finance Group, Inc. ("CFG") brings this diversity action alleging state law claims based on negligence and breach of fiduciary duty.  Defendant Stanbic Bank Limited ("Stanbic")[1] moves to dismiss the complaint primarily on the ground that Stanbic is not subject to personal jurisdiction in

---

[1] Defendant Great Lakes Auto Tech Int'l Ltd. ("Great Lakes"), a Kenyan company, has not made an appearance in this case.

New York.  For the following reasons, Stanbic's motion to dismiss is granted.

**BACKGROUND**

The following facts are asserted in the complaint and taken from documents integral to those claims.  This cause of action arises out of CFG's attempt to purchase 300 kilograms of gold bullion from defendant Great Lakes and a related company, Zilicon Freighters, Ltd. ("Zilicon"), both Kenyan entities.

In February 2009, CFG became aware of the opportunity to purchase gold bullion located in Kenya through discussions with John Saina ("Saina"), a Kenyan national.  As part of CFG's due diligence on the transaction, CFG held a telephone call with Illunga Ngoei ("Ngoei") on May 27, 2009, a representative of a gold mine owner and Zilicon.  At some point in May, CFG decided to go forward with the transaction provided that the existence of the gold could be verified.

Saina traveled to Kenya on May 29, to investigate the transaction.  On June 1, Saina went to the Kenyan offices of defendant Great Lakes on CFG's behalf to verify the existence of the gold and take samples.  Following this inspection, CFG and Zilicon entered into a contract for the delivery of 300 kilograms of gold to the United States on June 2.[2]  On June 4,

---

[2] The complaint states that the Zilicon and the CFG entered into

CFG also agreed to transfer $350,000 to Zilicon's attorney to be held in escrow to cover Kenyan taxes, customs fees, and storage.

On June 11, a representative of CFG traveled to Kenya to verify the existence of the gold and complete the transaction in person.  Following the representative's review, CFG agreed to immediately transfer the $350,000 to a bank account belonging to Great Lakes to expedite the delivery.  On June 12, CFG initiated a wire transfer of $350,000 from its bank account in Minnesota to Great Lakes' bank account maintained at Stanbic.  The wire transfer was routed through Stanbic's correspondent account with Deutsche Bank Trust Company ("Deutsche Bank") in New York.

On June 17, CFG received a fax copy of the wire transmission from Stanbic ("Wire Transfer Receipt").  The Wire Transfer Receipt reads: "NOTE THAT BEFORE WE PAID THE BENEFICIARY WE DID OUR DUE DILIGENCE AND THE BENEFICIARY BROUGHT TO THE BANK DOCUMENTS SHOWING THAT THEY WE(RE) SUPPLYING SOME MATERIAL."

At some point after the wire transfer, CFG discovered the transaction was fraudulent.  On June 22 and 23, CFG filed complaints with various authorities in Kenya, resulting in the

---

a contract for the delivery of the gold on June 2.  The complaint also states that the parties executed a purchase agreement for 300 kilograms of gold on June 5.  The complaint does not clarify the different purposes these documents served, and the contracts have not been appended to the complaint.

arrest of Ngoei and other participants in the fraud.  CFG also discovered Ngoei and the other participants had perpetrated this scheme at least once before using an account at Stanbic.

CFG has already filed two lawsuits related to these events.  On March 17, 2010, CFG filed suit in the District of Minnesota against Kenya and Kenyan government entities.  <u>Cmty. Fin. Grp., Inc. v. Republic of Kenya</u>, 663 F.3d 977 (8th Cir. 2011).  The district court dismissed the action for a lack of subject matter jurisdiction.  <u>Id.</u>  The Court of Appeals for the Eighth Circuit affirmed the dismissal.  <u>Id.</u>

CFG then filed suit against Stanbic in the District of New Jersey in June 2012.  <u>Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.</u>, 12cv3851 (FSH), 2013 WL 3223371 (D.N.J. June 25, 2013).  The district court denied Stanbic's first motion to dismiss for lack of personal jurisdiction without prejudice and allowed the plaintiff to obtain jurisdictional discovery from Stanbic.  Discovery included documents related to Stanbic's account with Deutsche Bank.  Upon completion of discovery, Stanbic renewed its motion to dismiss.  The district court then dismissed the case for lack of personal jurisdiction over Stanbic on June 25, 2013.  <u>Id.</u> at *5.

CFG filed the instant action on July 17, 2014.  Stanbic moved to dismiss the complaint on February 5, 2015, primarily on

the ground that this Court lacks personal jurisdiction over Stanbic.  Stanbic also moves to dismiss CFG's claims as untimely, for failure to state a claim, and under the forum non conveniens doctrine.  The motion was fully submitted on March 19.

In the complaint, CFG alleges that there is jurisdiction over this matter because the plaintiff is a citizen of Minnesota, the defendants are citizens of Kenya, and the amount in controversy exceeds $75,000.  The complaint also alleges that "Defendant [Stanbic] maintains its principle [sic] United States bank account at [Deutsche Bank], which is a citizen of New York, having an address of 60 Wall Street New York, NY 10005 and through which [Stanbic] conducts all United States Dollars wiring activity."

In support of its motion to dismiss for lack of personal jurisdiction, Stanbic attaches an affidavit from Stanbic's Senior Legal Counsel, Eliud Ogutu ("Ogutu") and an affidavit from John Ohaga, a Kenyan attorney admitted to practice before the High Court of Kenya.  Ogutu represents in his affidavit that Stanbic does not maintain an office, telephone number, or mailing address, or employ any personnel in the United States. In opposition to Stanbic's motion, CFG attaches four agreements governing the relationship between Stanbic and Deutsche Bank

5

("Deutsche Bank Agreements"), the Wire Transfer Receipt, statements from Stanbic's Deutsche Bank account, an affidavit from Andrew Vilenchik, the general manager at CFG, and an affidavit from Ogutu filed in the New Jersey litigation.  CFG also attaches printouts from a website regarding Standard Bank Group.  These printouts state that Stanbic is a member of Standard Bank Group, and describe the Standard Bank Group as having a New York office.

## DISCUSSION

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists."  Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013) (citation omitted) (Licci II).  In evaluating whether this standard is met, the pleadings and any supporting materials are construed in the light most favorable to the plaintiff.  Id.  "This showing may be made through the plaintiff's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." Southern New England Telephone Co. v. Global NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010) (citation omitted).  On the other hand, a court "will not draw argumentative inferences in the plaintiff's favor."  In re Terrorist Attacks on September 11,

2001, 538 F.3d 71, 93 (2d Cir. 2008) (citation omitted). Furthermore, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would "lack the factual specificity necessary to confer jurisdiction." Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998). In resolving Rule 12(b)(2) motions, a court is not "bound to accept as true a legal conclusion couched as a factual allegation." Id. (citation omitted).

In a diversity case, the issue of personal jurisdiction must be determined according to the law of the forum state. D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006). A district court may exercise jurisdiction over any defendant who would be subject to the jurisdiction of a court of general jurisdiction in the state in which the district court is located. Fed. R. Civ. P. 4(k)(1)(a). If the exercise of jurisdiction is appropriate under the state's statutes, the court then must decide whether jurisdiction is proper under the Due Process Clause of the Fourteenth Amendment. MacDermid, Inc. v. Deiter, 702 F.3d 725, 728 (2d Cir. 2012).

**I. General Jurisdiction**

Personal jurisdiction may be exercised over a defendant who is subject to general or specific jurisdiction in the forum state. Under N.Y. C.P.L.R. § 301, general jurisdiction exists

over a foreign corporation that is doing business in the state "not occasionally or casually, but with a fair measure of permanence and continuity." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000) (citation omitted); cf. Daimler AG v. Bauman, 134 S. Ct. 746, 760-61 (2014) (noting that under the Due Process Clause, general jurisdiction over a corporation is limited to the place of incorporation, principal place of business, and where the "corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State" (citation omitted)).

A fact-specific inquiry is necessary to determine whether a corporation's contacts with New York demonstrate "continuous, permanent and substantial activity." Wiwa, 226 F.3d at 95 (citing Landoil Res. Corp. v. Alexander & Alexander Servs., 918 F.2d 1039, 1043 (2d Cir. 1990)).  The contacts to be considered include the existence of an office in New York, the solicitation of business in New York, the presence of property in New York, and the presence of employees or agents in New York.  Landoil, 918 F.2d at 1043.  Solicitation of business alone is insufficient to find general jurisdiction.  Id.

The plaintiff does not allege sufficient facts to support a finding of general jurisdiction.  CFG asserts in its brief that Stanbic maintains an office in New York.  The only evidence

submitted by CFG, however, shows that Standard Bank Group, of which Stanbic is a member, has a New York office. No additional facts are alleged to explain the relationship between Standard Bank Group and Stanbic, and Standard Bank Group is not a defendant in this action. Moreover, the plaintiff does not allege that Stanbic's principal place of business is in New York, that Stanbic owns property in New York, or that Stanbic solicits business in New York. At most, the plaintiff argues that Stanbic's principal U.S. bank account is in New York, and Standard Bank Group has a New York office. This is insufficient to establish a prima facie showing that Stanbic is subject to general jurisdiction in New York.

**II. Specific Jurisdiction**

New York's long-arm statute provides for specific personal jurisdiction over certain non-domiciliaries. N.Y. C.P.L.R. § 302(a). In relevant part, Section 302(a)(1) allows the exercise of personal jurisdiction over an out-of-state defendant if the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state." Id. § 302(a)(1). "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." Eades v.

Kennedy, PC Law Offices, No. 14-104-CV, 2015 WL 3498784, at *2 (2d Cir. June 4, 2015) (citing Licci II, 732 F.3d at 168).

"[T]he use of a New York correspondent bank account, standing alone, may be considered a transaction of business under the long-arm statute if the defendant's use of the correspondent account was purposeful." Licci II, 732 F.3d at 168 (citation omitted). "[D]etermining what facts constitute 'purposeful availment' . . . always requires a court to closely examine the defendant's contacts for their quality." Licci v. Lebanese Canadian Bank, SAL, 20 N.Y.3d 327, 338 (2012) (Licci I).

> Purposeful activities are volitional acts by which
> the non-domiciliary avails itself of the privilege
> of conducting activities within the forum State,
> thus invoking the benefits and protections of its
> laws. More than limited contacts are required for
> purposeful activities sufficient to establish that
> the non-domiciliary transacted business in New York.

Paterno v. Laser Spine Inst., 24 N.Y.3d 370, 376 (2014) (citation omitted).

"[C]omplaints alleging a foreign bank's repeated use of a correspondent account in New York on behalf of a client . . . show purposeful availment . . . ." Licci II, 732 F.3d at 168 (citation omitted). Facts, however, showing that the defendant's involvement in the use of a bank account was essentially "adventitious -- i.e., it was not even [the

10

defendant's] doing" -- will not suffice to establish purposeful availment. Licci I, 20 N.Y.3d at 338; cf. Eades, 2015 WL 3498784, at *3 (describing the defendant's transaction as "active (rather than responsive)" in finding the defendant's activities purposeful).

The plaintiff alleges only one connection between this case and New York: the wire transfer of funds from CFG to Great Lakes through Stanbic's Deutsche Bank correspondent account. The plaintiff also alleges that a similar transaction took place before, but provides no additional allegations. Taking all reasonable inferences in the plaintiff's favor, these allegations do not constitute a prima facie showing that Stanbic's use of the correspondent account was purposeful. In Licci, the plaintiff alleged that the defendant foreign bank executed dozens of wire transfers using its correspondent account in New York for an account held by a "financial arm" of a terrorist organization. Licci II, 732 F.3d at 166, 168. The "frequency and deliberate nature of [the defendant's] use" of the correspondent account was "determinative." Id. at 168. Here, plaintiff provides evidence of only one transaction which relates to the claim at hand. Moreover, this use of the correspondent account was initiated by a party other than Stanbic. Absent an established course of dealing, the use of

11

the correspondent account to complete the wire transfer was "adventitious," that is to say "not even [Stanbic's] doing." Licci I, 20 N.Y.3d at 338 (citation omitted).  Adventitious uses of a New York bank account are insufficient to demonstrate that the use of the account was "purposeful."

The plaintiff primarily argues in opposition to Stanbic's motion to dismiss that Stanbic has consented to jurisdiction in New York through the Deutsche Bank Agreements.  This argument fails to establish that this Court has personal jurisdiction over Stanbic as it relates to the plaintiff's claims.  The Deutsche Bank Agreements contain materially identical choice of forum provisions.  In the Deutsche Bank Agreements, Stanbic and Deutsche Bank consent to jurisdiction in New York for litigation "arising []under" or "relating []to" the Agreements.  Accordingly, these choice-of-forum provisions all limit the waiver of personal jurisdiction to litigation arising under or relating to the Deutsche Bank Agreements, which govern the relationship between Deutsche Bank and Stanbic.  The plaintiff may not rely on these choice-of-forum provisions to establish personal jurisdiction in its own action.  The instant case does not arise under or relate to the Deutsche Bank Agreements.  Moreover, the plaintiff is not a party to or a third-party beneficiary under the Deutsche Bank Agreements and is therefore

unable to enforce their terms.  See Premium Mortgage Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009).

Because the plaintiff has failed to allege that Stanbic purposefully availed itself of New York as a forum, New York's long-arm statute does not reach Stanbic.  The remainder of the personal jurisdiction inquiry and other legal issues raised by Stanbic need not be reached.  The complaint is dismissed as to Stanbic for a lack of personal jurisdiction.

## CONCLUSION

Stanbic's February 5, 2015 motion to dismiss the complaint is granted.  The Clerk of Court shall close the case.

Dated:    New York, New York
          July 10, 2015

                                    _____
                                         DENISE COTE
                                    United States District Judge